UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**ROY GUYS ET AL.**                                                   **CIVIL ACTION**

**VERSUS**                                                            **NO. 18-13893**

**CHARLIE BRADEN ET AL.**                                             **SECTION: "H"**


**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiffs Roy Guys, Walter Coleman, Jr., Terrance Carter, and Cassandra Duncan allege they were injured when the parked car in which they were sitting was sideswiped by a tractor-trailer owned by Defendant Swift Transportation Co., Inc., and driven by Defendant Charlie Braden ("the Accident"). Plaintiffs testified that at the time of the Accident, Guys was sitting in the driver's seat; Coleman was sitting in the passenger seat; Terrance Carter was sitting in the rear driver's seat; and Cassandra Duncan was sitting in the rear passenger seat. Plaintiffs allege that the Acura sedan sustained damage in the Accident, including a scuff mark in front of the driver's side, rear wheel well; a dented fender; and a bent rear, lower control arm. Plaintiffs also each allege neck and back injuries as a result of the Accident. Specifically, Plaintiff Guys alleges he sustained multiple herniated cervical and lumbar discs in the Accident, requiring three epidural steroid injections ("ESIs") and $15,419 in billed medical charges. Plaintiff Coleman alleges he sustained facet arthropathy, C3-4 disc pathology, and chronic cervical, thoracic, and lumbar pain, requiring three ESIs and $23,824 in billed medical charges. Plaintiff

Duncan alleges she sustained disc herniations at C5-6 and C6-7 and low back injuries, requiring three ESIs and $22,777 in billed medical charges. Plaintiff Carter alleges he sustained bulging discs at C3-4, C4-5 and C5-6 with facet arthropathy, along with facet arthropathy at L2-3 to L5-S1, requiring two ESIs and $31,832 in billed medical charges.

Defendants, on the other hand, contend that no one was in the Acura sedan at the time of the Accident. Charlie Braden and his wife Chelsea Braden, who was in the Swift tractor-trailer at the time of the Accident, each testified that they saw two men looking under the hood of the Acura sedan just prior to the Accident and that they did not see anyone inside of the Acura sedan. They testified that those same two men later waved them over to tell them that the tractor-trailer had sideswiped the Acura sedan. Defendants also argue that the force of the alleged sideswipe Accident could not have caused the injuries alleged by Plaintiffs.

A bench trial was held on February 23, 2021. Having considered the evidence admitted at trial and the arguments of counsel, this Court makes the following findings of fact and conclusions of law. To the extent a finding of fact constitutes a conclusion of law, and vice versa, the Court adopts it as such.

## **FINDINGS OF FACT**

1. On September 6, 2017, an Acura sedan parked in the lot of Coleman Wrecker Service in New Orleans, Louisiana was sideswiped by a tractor-trailer ("the Accident").
2. At the time of the Accident, the tractor-trailer was being operated by Defendant Charlie Braden. His wife, Chelsea Braden, was riding in the passenger seat.

3. At the time of the Accident, Defendant Charlie Braden was within the course and scope of his employment with Swift Transportation Co., Inc. ("Swift").
4. Both the tractor and the 53-foot box trailer involved in the Accident were owned by Swift.
5. The Acura sedan involved in the Accident was owned by Plaintiffs Roy Guy and Cassandra Duncan, who are married.
6. Neither Roy Guys nor Cassandra Duncan had obtained liability insurance for the Acura sedan.
7. Roy Guys had recently purchased the Acura sedan at an auction and brought it to Coleman Wrecker Services for engine repairs.
8. Walter Coleman is an auto mechanic at Coleman Wrecker Services who was working to repair the Acura sedan.
9. Swift sent Charlie Braden to Coleman Wrecker Service to retrieve the 53-foot box trailer, which had been parked toward the back of the Coleman Wrecker Service lot.
10. After securing the trailer to the Swift tractor, Charlie Braden began driving the tractor-trailer from the back of the parking lot at Coleman Wrecker Service to the gate to exit the parking lot. As he approached the gate, he made a right-hand turn out of the lot.
11. Plaintiffs' Acura was parked parallel to the path of the Swift tractor-trailer, close to the gate through which the tractor-trailer had to exit, and facing away from the gate.
12. As the tractor-trailer made its right-hand turn, the trailer sideswiped Plaintiffs' Acura sedan.
13. The tractor-trailer was traveling at between 3 and 5 miles per hour at the time of the Accident.

14. Charlie Braden did not see or sense any contact between the parked Acura and the Swift tractor-trailer when turning the tractor-trailer out of the lot.
15. When the tractor-trailer did not stop after the Accident, Plaintiffs Guys and Coleman followed the tractor-trailer in the Acura sedan. No one else was in the Acura sedan at this time.
16. The Court finds that the Acura sedan sustained a scuff mark in front of the driver's side, rear wheel well and a dented fender as a result of the Accident.
17. The Court found the testimony of James Pittman, an expert in accident reconstruction, to be very credible. The Court adopts Pittman's testimony that (a) the "scuff mark" sustained by the Acura sedan in the Accident measured approximately 22.8 inches above the ground, was 4.5 inches across, and 8 inches in length; (b) the scuff mark was created from the front of the car to the back; and (c) the lower control, or suspension, arm could not have been bent as a result of this Accident because there was no evidence that the trailer made contact with the Acura sedan's wheel.
18. The Court finds that no one was in the Acura sedan at the time of the Accident.
19. The Court does not find Plaintiffs' testimonies credible in light of the discrepancies regarding the moments leading up to the Accident. Specifically, Coleman testified that he was looking over his left shoulder and behind him at the approaching truck at the time of the Accident. Guys testified that he was looking forward when he saw the truck approaching, and he began "panicking" and "freaking out." He testified that the truck first hit the driver's side mirror and then scratched all the

way to the back of the car. Duncan testified that she saw the tractor-trailer approaching when she looked up after hearing her husband, Guys, screaming. Carter testified that he was leaned forward with his hands on the back of the driver's seat talking to Guys but that he did not see the tractor-trailer approaching before the Accident. Pittman's finding that the damage to the Acura sedan was sustained from the front to the back squarely contradicts Coleman's testimony that he was looking behind him at the approaching tractor-trailer. Further, this Court does not find credible Carter's testimony that he was talking to a "panicked" and "screaming" Guys but did not see the tractor-trailer approaching. In addition, there was no evidence corroborating Guys's suggestion that the tractor-trailer hit the driver's side mirror.

20. The Court finds the testimony of the Bradens—that two men were standing outside of the Acura sedan at the time of the Accident—to be most credible.

21. The Court adopts Pittman's testimony that, based on the damage sustained to the Acura sedan, the sideswipe Accident generated a Delta-V of 0.5 to 1 mile per hour, with a corresponding acceleration of less than 1G. The impact of this force would have caused little to no movement of the Acura sedan.

22. The Accident did not cause the Acura sedan to shake as alleged by Plaintiffs.

23. The Court accepts Dr. Ronald Fijalkowski as an expert in biomechanics and injury causation.

24. Based on the calculations performed by Pittman, Dr. Fijalkowski determined that a hypothetical person in the Acura would not have had any significant movement in response to the "scuff" impact because the

forces were extremely low and insufficient to generate the necessary injury mechanism in an average person for cervical and lumbar disc herniations or sprains.

25. The Court finds that, even if Plaintiffs were in the vehicle, the force of the Accident could not have caused the injuries allegedly sustained by Plaintiffs.

## CONCLUSIONS OF LAW

1. This Court has diversity jurisdiction over this matter.
2. Louisiana law governs this matter.
3. Plaintiffs allege that Defendants were negligent in causing the Accident pursuant to Louisiana Civil Code article 2315.
4. Louisiana employs the duty-risk analysis in negligence cases, under which plaintiffs bear the burden to prove that: "(1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element)." *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (internal quotations omitted).
5. Plaintiffs have not carried their burden to show that Defendants breached a duty owed to them because this Court has found that none of the Plaintiffs were in the Acura sedan at the time of the Accident.

6. Likewise, Plaintiffs have not carried their burden to show that the Accident was the cause of their physical injuries.

7. Plaintiffs' claims are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana this 11th day of March, 2021.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**